**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No. 25bk08670 |
| | ) | |
| | ) | |
| Ani Roof LLC, | ) | Chapter 11 |
| | ) | |
| | ) | |
| Debtor. | ) | Hon. Timothy A. Barnes |

**MODIFIED SECOND AMENDED CHAPTER 11,**
**SUBCHAPTER V PLAN OF REORGANIZATION**

Ani Roof LLC, debtor and debtor-in-possession in the above captioned case ("Debtor" or "Ani Roof"), by and through its attorneys, files this *Modified Second Amended Chapter 11, Subchapter V Plan of Reorganization* (the "Plan"). In support, the Debtor respectfully states as follows.

**A.      Description and History of the Debtor's Business**

**1.  Nature and History of Debtor's Business**

The Debtor was formed for the purpose of building out and operating a high-end rooftop restaurant and bar to be located inside of leased premises at 2032 N. Clyburn Avenue, Chicago, Illinois (the "Development"). The Development is a $70+ million mixed-use project of commercial and residential spaces that is, as of the date of the filing of this Plan, fully leased. The Debtor's rooftop location is in a growing Chicago neighborhood between the Lincoln Park and Bucktown neighborhoods and it is adjacent to the newly developed neighborhood known as Lincoln Yards. *See* **Exhibit A**, photos of the Debtor's premises (the "Premises") reflecting the current condition of the Premises. Debtor's manager is engaged in key commercial developments in the neighborhood of the Debtor's location as an investor and developer of the Development and

1

another multi-million dollar project a block away consisting of 56 apartments and 42,000 square feet of commercial space.

   2. **Legal Structure of the Ownership of Debtor**

Debtor was formed in 2024 as an Illinois limited liability company and is comprised of five members: Anixter Roof Investment LLC, Jeff Kaplan, HOA Rooftop LLC, JPM Holdings LLC, and its managing member Ani Roof MGR LLC ("Ani Manager"). Jon Morgan ("Morgan"), an experienced restaurant and commercial development owner/operator—and responsible person for the Debtor—is a member and manager of Ani Manager. The membership of Ani Roof is made up of two classes: Class A, comprised of its members – Anixter Roof Investments LLC (5.09%), HOA Rooftop LLC (59.14%), Jeffrey Kaplan (5.09%), and JPM Holdings LLC (30.68%) (each of the Class A members will be referred to individually as a "Member" or together as "Members"); and Class B, comprised of its manager – Ani Roof MGR LLC (60%).

HOA Rooftop LLC's ("HOA") membership interest is subject to dispute due to this member's failure to fund its $675,000 capital contribution requirements under the Debtor's current operating agreement. Michael Whalen is HOA's controlling member. Mr. Whalen is also a controlling member of the Debtor's landlord, Annexation, LLC (the "Landlord"). Debtor's Members or entities owned by the Members hold a non-controlling interest in the Landlord through LY Annex, LLC ("LY Annex"). Notwithstanding the Members' interest in the Landlord, Mr. Whalen has directed the Landlord's relationship with the Debtor. Moreover, the individual member representatives of the three Contributing Members (defined below) executed personal guaranties of the Lease on Debtor's behalf in favor of Landlord. Whalen is not a guarantor of the Lease. *See* Article 6 Sec. 6.01 for a description of the Lease.

**3. Events Leading to the Filing of Debtor's Chapter 11 Case**

Ani Roof sought bankruptcy protection in the above captioned case (the "Bankruptcy Case") under Title 11 of the United States Code (the "Bankruptcy Code"), Chapter 11, Subchapter V on June 6, 2025 (the "Petition Date"). The Bankruptcy Case was precipitated by (a) a dispute with the Landlord (acting under the management and direction of Mr. Whalen),[1] (b) construction delays, and (c) delays in Debtor's ability to raise the final capital that will allow Debtor to open its doors. Debtor's initial business plan contemplated raising capital through a subscription investment model consistent with SEC rules governing the sale of non-publicly traded securities. However, the construction delays and the need to file this Bankruptcy Proceeding in order to stay the Landlord's eviction proceeding has interrupted Debtor's ability to raise capital under this model.

*Landlord Tenant Dispute Led to Capitalization Delays*

The delay in the ability to fully raise the needed funds to complete the Premises buildout is explained in large part by the refusal of HOA from providing its capital funding required of it as a member of the Debtor. As a 59.14% interest holder in the Debtor, HOA was required to provide $675,000 to the Debtor but it has not yet funded his contribution. While all the other Members provided their capital contribution prior to the Petition Date, HOA has not provided any funds to the Debtor. As of the date of filing of the Plan, Members, JPM Holdings, LLC, Anixter Roof Investment, LLC and Jeffrey Kaplan (the "Contributing Members") have contributed a combined capital of $673,786.28 through the date of the filing of this Plan.

---

[1] Although the Members or their representatives have an interest in the Landlord, none alone or collectively have a controlling interest to prevent the Landlord's actions against the Debtor.

*Construction Delays Led to Late Rental Payments*

Despite the initial construction delays, Debtor was able to complete the majority of the necessary construction and build-out of the Premises to commence operations. However, the construction delays meant that Debtor's rent payment commencement date pursuant to its lease terms started before it was able to complete the remainder of the capital raise needed to finish the build-out of the Premises. In March 2025, Mr. Whalen (acting through the Landlord) refused to provide a rent-payment grace period and the Landlord initiated an eviction and collection proceeding just prior to the Petition Date.

**4. HOA and Mr. Whalen Dispute the Debtor's Perspective on Pre-Petition Events**

HOA, Annexation and Mr. Whalen dispute much of the Debtor's characterization of the pre-petition events and deny that HOA, Annexation or Mr. Whalen negatively contributed to the Debtor's financial condition or have any liability to the Debtor or its estate.

**5. Significant Events During the Bankruptcy Case**

On July 7, 2025, Debtor filed its *Motion to Authorize the Debtor to Incur Debt* [ECF No. 32] (the "Motion to Incur") which sought authority for the Contributing Members to advance payments for rent due under Debtor's commercial real estate lease as well as monthly retainer deposits paid in escrow to the Subchapter V Trustee, and to have the payments treated as further equity contributions of the Contributing Members. The Motion to Incur was unopposed and the court granted the order on July 22, 2025 [ECF No. 38] ("Order Authorizing Motion to Incur"). Since the Petition Date, the Contributing Members have advanced monthly rent payments to the Landlord and the Subchapter V Trustee's escrow payments.

Other than the filing of this Plan and the entry of the order granting Debtor's Motion to Incur, no other significant post-petition events have taken place.

**B.      Plan Funding Sources**

The Debtor will fund (a) all administrative expense claims; (b) its cure costs under the Lease, (c) its operating costs to open the bar and restaurant through the first quarter of operations, and (d) an initial down payment of $675,000.00 to Class 2 creditor, Power Construction LLC ("Power") through the Contributing Members who have committed to fund the Debtor with additional $1.590 million within 30 days of the Effective Date of the Plan (the "Member Funding"). *See* Article 11, Sec. 11.02 for the meaning of the Effective Date. A copy of the Capital Funds Agreement is attached as **Exhibit B**. The Debtor and Contributing Members reserve the right to raise additional capital from other sources including additional equity investors. The Contributing Members' agreement to contribute the Member Funding to the Debtor shall not create any liability to any other party including but not limited to any of the Debtor's creditors whether currently known or unknown.

The Debtor will fund all future payments under the Plan through its operating profits as set forth more fully in Debtor's plan projections attached as **Exhibit C**, which contains Debtor's revenue projections and a chart showing the application of the Member Funding allocated to its start-up costs. The estimated start-up costs include (1) approximately $513,400.00 in acquisition costs for furnishings and equipment, (2) $20,000.00 to complete the liquor licensing process, (3) $57,953.21 due to the Landlord to cure pre-petition rent arrears, (4) $47,052.00 due to the Landlord to fund Debtor's security deposit pursuant to the terms of the Debtor's Lease, and (5) approximately $200,000.00 to begin operating the bar ( the "Start-Up Costs").

**C.      Management of Debtor Following Plan Confirmation**

Following confirmation of the Plan, Debtor will be operated by Ani Manager through Morgan. Morgan is also the indirect member of Debtor through JPM Holdings, LLC. Morgan's

continuance in management of Debtor through Ani Manager is consistent with the interests of creditors and equity security holders and with public policy. Morgan has more than 20 years of experience in commercial real estate development and investment sales and has been a seed-level investor in several restaurant and bar venues throughout his career in the Chicagoland and Colorado markets. He has been involved over his career in the investment and/or development of 36 properties within his various partnerships. For compensation as manager, Debtor has agreed to pay Ani Manager a management fee of 5% (the "Management Fee") of Debtor's gross sales less the sales tax collected on those sales. The Debtor and Mr. Morgan, however, have further agreed that Mr. Morgan and the Debtor's Members will not receive the Management Fee or any other compensation until Class 2 Holders claims are paid in full.

**D.  Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity-interest holders would receive in a chapter 7 liquidation. Debtor has yet to acquire its furnishings and equipment and has cash on hand of $10.00. Therefore, in a hypothetical liquidation, there would be no funds to distribute to creditors. Attached hereto as **Exhibit D** is the Debtor's liquidation analysis. Debtor's going-concern value and its projected operating profits are the only and best source for funding the Plan and paying its creditors. Debtor intends to pay creditors 100% in full, with interest, therefore this Plan is in the best interest of creditors.

**1.  Projected Recovery of Avoidance Actions**

The Debtor has reviewed its prepetition transfers made within the preference period and it has not identified any potential preference claims that would realize cash to fund the Plan. Notwithstanding, the Debtor reserves the authority to pursue through an adversary proceeding, any

preference claim that has not been identified. Any such proceeds recovered after confirmation will be used to fund the obligations under this Plan.

### 2. Insider Transactions

The Debtor's insiders consist of its members, Anixter Roof Investment LLC, Jeff Kaplan, HOA Rooftop LLC, JPM Holdings LLC, and its managing member Ani Manager as well as the Jon Morgan, Cameron Cummins and Michael Whalen, who are the respective members of those corporate Members (collectively, the "Insiders"). None of the Insiders received payments from Debtor for any purpose.

### 3. Other Causes of Action

Debtor reserves the right to pursue a member contribution claim against HOA for at least $675,000 which is the amount that it committed to fund but has failed to do so. As noted above, HOA disputes it owes any liability to the Debtor.

### 4. Ability to Make Future Plan Payments and Operate Without Further Reorganization

Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business. Debor's Projections at **Exhibit C** reflect that it will have sufficient operating profit (defined in Section 1191(d) of the Bankruptcy Code as projected disposable income) to fund the proposed Plan payments.

The final Plan payment is expected to be paid on or about August 1, 2029, on the assumption of an Effective Date of February 28, 2026, and a business open date of June 1, 2026.

### ARTICLE 1: SUMMARY

This plan provides for:

**1.01 Payment of claims of construction lien creditors.** Power is Debtor's general contractor, and its claim is comprised of amounts due to it as well as its subcontractors who also

have filed claims reflecting their unique portion of the Power claim. Power will receive payment of 100% of its claim plus costs (as defined herein), interest, and payments to Power will include payments owed to its subcontractors, who will be paid through Power. The value of the Power Claim (as defined below), inclusive of the claims of its subcontractor's is acknowledged to be $1,938,295.00.

**1.02** **Payment of non-priority unsecured claims.** To the extent non-priority unsecured creditors exist, they will be paid in full within thirty (30) days of the Effective Date up to an aggregate of $25,000. However, Debtor reserves the right to object to unsecured claims or to compromise the amount of each of the unsecured claims.

**1.03** **Payment of administrative expenses and priority claims.** This Plan provides for full payment of administrative expenses and priority claims. Administrative expenses are estimated as follows: Subchapter V Trustee (the "Trustee") $10,000; and Debtor's Counsel, Taft Stettinius & Hollister, LLP ("Counsel") $150,000 (together, the "Administrative Expenses"). The Members made a prepetition retainer deposit of $25,000 with Counsel and are expected to remit a total of approximately $7,500 in post-petition escrow payments to the Trustee to defray the Administrative Expenses to be paid upon confirmation of the Plan and court approval of the Trustee's and Counsel's fees respectively. Payment of the Administrative Expenses is subject to court approval upon the timely request of the Trustee and Counsel.

**1.04** All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim.

**ARTICLE 2: CLASSIFICATION OF CLAIMS AND INTERESTS**

**2.01 Class 1**. Landlord Claim of Annexation LLC.

**2.02 Class 2**. Construction Lien Claims.

**2.03 Class 3.** Convenience Claims consisting of claims that would otherwise be a general unsecured claim in an aggregate amount of $25,000.00 or less.

**2.04 Class 4.** The subordinated debt of the Contributing Members for the Court-approved post-petition funds loaned to the Debtor.

**2.05 Class 5.** Class A equity interests in the Debtor.

**2.06 Class 6.** Class B equity interest in the Debtor.

## ARTICLE 3: TREATMENT OF ADMINISTRATIVE EXPENSES, PRIORITY TAX CLAIMS, AND QUARTERLY AND COURT FEES

**3.01    Unclassified claims.** Under section 1123(a)(1) of the Bankruptcy Code, allowed administrative expenses and priority tax claims are not in classes.

**3.02    Administrative expenses.** Administrative Expenses allowed under section 503 of the Bankruptcy Code will be paid in full upon court approval of the same following confirmation of the Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

## ARTICLE 4: TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

**4.01    Claims and interests are treated as follows under this Plan:**

**Class 1**. **Annexation LLC (Not Impaired. Deemed to have accepted the Plan)**

Annexation LLC is Debtor's landlord. Debtor will assume the Lease which take effect following (a) payment in full of Landlord's prepetition lease deficiency claim of $57,953.23 plus the outstanding security deposit in the amount of $47,053.00 (together, the "Lease Deficiency"); and (b) the removal of all pre-petition mechanics liens held by Power and certain subcontractors against the Development. Debtor will remit payment equal to the Lease Deficiency within thirty (30 days) of the Effective Date of the Plan.

**Class 2**. **Construction Lien Claims(Impaired. Entitled to vote on the Plan).**

Shortly before the Petition Date, Debtor's general contractor, Power, filed a mechanic's lien ("General Contractor Lien") against the Development for its fees and includes amounts due to its subcontractors who performed services on the Premises, namely, Chicago Area Plumbing & Mechanical, Inc., Contract Flooring Serv. Co., Inc., Great Lakes Plumbing and Heating Co., Premier Mechanical Inc., Thorne Associates, Inc., Bernhard Woodwork Ltd., and Shamrock Electrical Co. (collectively, the "Subcontractors"). The combined total of Power's claim including its Subcontractors is $1,894,850.00, plus expenses incurred in preserving its rights in the amount of $11,908, plus $31,537 for expenses Bernhard incurred preserving its rights, for an aggregate claim of $1,938,295.00 (the "Power Claim"). In addition, the Subcontractors also filed mechanics liens (the "Subcontractor Liens") against the Development for their portion of the Power Claim.

Debtor will pay the Class 2 Holders 100% as follows: $675,000 (the "Initial Contractor Payment") paid within forty-five (45) days of the Effective Date to Power and distributable by Power in a manner consistent with their respective claims or such other agreements as may be reached between Power and the Subcontractors. The balance of the remaining $1,263,295 of the Power Claim (the "Remaining Contractor Claim") will be paid together with 8% interest in equal monthly installments due on the first day of the month (or the first business day of the month if the first day of the month occurs on a weekend or federal holiday) over the period of 3 years or 36 months (the "Plan Period") which Power will distribute in a manner consistent with their respective claims or such other agreements as may be reached between Power and the Subcontractors. This amounts to an annual distribution to Power of principal and interest of approximately $490,200.81. These payments are to commence ninety (90) days following the first date that Debtor is opened for business. In the event Debtor fails to make a timely payment on the Remaining Contractor

Claim (a "Default"), and upon written notice to the Debtor as provided in Article VIII of this Plan (the "Default Notice"), Debtor shall have ten (10) days to cure the Default.

Debtor is authorized to remit the principal due to Power (which encompasses the amounts due to the Subcontractors) in full at any time prior to the conclusion of the Plan Period without prepayment penalty or additional costs. To the extent that any amount is collected from non-contributing member, HOA, those amounts will be applied to the balance of the Remaining Contractor Claim.

In addition, Power will receive a guaranty (the "Guaranty") of payment from the Contributing Members for the Remaining Contractor Claim that Power may pursue in the event of the Debtor's failure to make timely payments as provided in the Plan on the Remaining Contractor Claim. Power shall be obligated to make distributions to the Subcontractors of amounts consistent with their respective claims. The Guaranty is attached hereto as **Exhibit E**. As part of the Guaranty, the Contributing Members have agreed that any funds they may receive from their ownership interest in the Debtor or in the Development will be turned over to Power until the Remaining Contractor Claim is paid in full. Power shall be obligated to make distributions to the Subcontractors of amounts in a manner consistent with their respective claims or such other agreements as may be reached between Power and the Subcontractors. Should Power be unable to exercise its rights pursuant to the Guaranty it shall be entitled to assign (directly or by operation of law) its rights to the Subcontractors to the extent of their respective interests.

Within fifteen (15) days of the payment of the Initial Contractor Payment and Power's receipt of the Guaranty fully executed by the Contributing Members, Power and the Subcontractors shall release and extinguish the General Contractor Lien and Subcontractor Liens through the recording of a Release of Mechanic's Lien with the Cook County Clerk's Office, it being

understood that the payment of the Initial Contractor Payment and the receipt of the Guaranty are each an express condition precedent to any obligation of Power and the Subcontrcators to release their mechanics lien claims, respectively. In the event Power or any Subcontractor does not timely release the General Contractor Lien or any Subcontractor Lien, as applicable, such General Contractor Lien or Subcontractor Lien(s) may be released upon a motion by the Debtor, with proper notice to the applicable General Contractor or Subcontractor(s), by further order of the Bankruptcy Court through the Bankruptcy Court's exercise of its *in rem* jurisdiction. Upon the release of the General Contractor Lien and Subcontractor Liens (whether achieved through their voluntary release or from further Order of the Bankruptcy Court), the remaining balance due on the Remaining Contractor Claim will be secured with first-priority liens (the "Post-Petition GC Lien" and the "Post-Petition Subcontractor Liens" respectively) evidenced by a UCC-1 financing statement on all of Ani Roof's assets. The Post-Petition GC Lien and Post-Petition Subcontractor Liens will be *pari passu* with each other.

**Class 3. Convenience Claims of General Unsecured Non Priority Creditors (Not Impaired. Deemed to have accepted the Plan)**

Debtor is not aware of any non-priority general unsecured creditors (the "General Unsecured Creditors"). Notwithstanding, to the extent any General Unsecured Creditor does exist, those claims will be paid in full within forty-five (45) days of the Effective Date provided that the total aggregate amount of such claims is equal to or less than $25,000.00.

**Class 4. Contributing Members Subordinate Debt. (Impaired. Entitled to vote on the Plan)**

The Contributing Members funded the Debtor's cost of administration of this bankruptcy case and Debtor's post-petition monthly rental obligations. The Contributing Members will subordinate their claims or interests for the contributions made during this Bankruptcy Proceeding

to the creditors in Class 1, Class 2, and Class 3. Upon payment in full of Class 1, Class 2, and Class 3, the Contributing Members shall receive payment of $1 on account of their Claims against the Debtor.

**Class 5. Class A Equity Interests (Impaired. Entitled to Vote)**

Contributing Members will retain, as of the Effective Date, a Class A membership interest equal to the percentage that is the total capital contribution of such Contributing Member divided by total capital contributed by all members as of the Effective Date. To the extent that any existing Class A member has contributed $0.00 on or before the Effective Date, the Class A member's interest will be reduced to 0 percent however, Debtor will retain the right to pursue contribution claims against any Class A Members, including HOA and any related parties who agreed to fund the Debtor prior to the Petition Date but have failed to do so.

Treatment of Class 5 creditors shall in no way impair or impede the admission of future Class A members or the future modification of the Contributing Member's membership interests.

**Class 6. Class B Equity Interest (Unimpaired. Deemed to have accepted the Plan)**

Debtor's only Class B member is its manager, Ani Roof MGR LLC. This member shall retain its membership interest.

**ARTICLE 5: ALLOWANCE AND DISALLOWANCE OF CLAIMS**

**5.01 Disputed claims.** A *disputed claim* is a claim that has not been allowed or disallowed and as to which either:

(a) A proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

(b) No proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

**5.02    Delay of distribution on a disputed claim.** No distribution will be made on account of a disputed claim unless and until it is allowed.

**5.03    Settlement of disputed claims.** The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Bankruptcy Rule 9019.

## ARTICLE 6: PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.01    Assumption/Rejection of Leases and Executory Contracts**

**120-month triple-net lease with lessor, Annexation LLC, with respect to its premises at 2032 N. Clybourn Ave., Chicago, IL 60614 (the "Lease")**

The terms of the Lease provide Debtor the lease of the rooftop bar and restaurant space in the Development that it will operate at a monthly rent of $15,684.17 (subject to annual increases) plus $2,281.33 in charges for real estate taxes, insurance and common area maintenance, for a total of $17,965.50 per month.

The Debtor assumes the Lease and within forty-five (45) days of the Effective Date will cure the rent arrears and security deposit obligations and the Lien and Subcontractor Liens shall be released from the Development.

**6.02    Deadline to File Claims for Rejected Leases and Executory Contracts**

Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, either before the Effective Date or under section 6.01 of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date. A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 14 days after the date on which the court enters the order confirming this

Plan.

## ARTICLE 7: EFFECT OF CONFIRMATION OF PLAN AND INJUNCTION

### 7.01 Discharge

If the Plan is confirmed under section 1191(a) of the Bankruptcy Code, on the Effective Date, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in section 1141(d)(1)(A) of the Bankruptcy Code, except that the Debtor will not be discharged of any debt:

(a) imposed by this Plan; or

(b) to the extent provided in section 1141(d)(6) of the Bankruptcy Code.

If the Plan is confirmed under section 1191(b) of the Bankruptcy Code, confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in section 1192 of the Bankruptcy Code. The Debtor will not be discharged from any debt:

(a) on which the last payment is due after the first 3 years of the plan, or as otherwise provided in section 1192 the Bankruptcy Code; or

(b) excepted from discharge under section 523(a) of the Bankruptcy Code, except as provided in Bankruptcy Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

### 7.02 Binding Effect of Plan.

Upon the Effective Date, the Plan and each of its provisions shall be binding on Debtor, all Creditors, all Equity Interest holders, and all Persons acquiring property under the Plan, whether or not they voted to accept the Plan, whether or not they had a right to vote on the Plan, whether or not any Claim or Equity Interest held by any of them is Impaired under the Plan, whether or not any Claim or Equity Interest held by any of them is Allowed in full, only in part, or Disallowed in

full, and whether or not a Distribution is made to any of them under the Plan. This provision includes all successors and assigns of the parties named herein.

**7.03    Vesting of Assets.**

Upon the Effective Date, all assets of Debtor shall vest in the Debtor, except as otherwise provided in the Plan.

**7.04    Injunction**

Confirmation of the Plan will result in the issuance of a permanent injunction against the commencement or continuation of any judicial, administrative, or other action or proceeding on account of any Claims against Debtor that arose prior to the Confirmation Date, unless such action is authorized by the Plan or section 1141 of the Bankruptcy Code.

**ARTICLE 8 EVENTS OF DEFAULT AND EFFECT THEREOF**

Any creditor remedies allowed by section 1112(b)(4)(N) of the Bankruptcy Code shall be preserved to the extent otherwise available at law. In addition to any rights specifically provided to a claimant treated pursuant to this Plan, a failure by the reorganized Debtor to make a payment or maintain the required insurance as to all Collateral to a creditor pursuant to the terms of this Plan shall be an event of default as to such payments or the maintaining of insurance, if the payment or lack of insurance is not cured within ten (10) days. Creditor shall provide written notice of default to the reorganized Debtor within such ten (10) day cure period.  Any default notice, inquiry, or other formal communication pursuant to the Plan shall be mailed by certified mail, return receipt requested to the following:

To:             Ani Roof, LLC
                c/o Jon Morgan
                350 N. Clark Street, Suite 500
                Chicago, IL 60654
                jon@krikadevelopment.com

Taft Stettinius & Hollister, LLP
c/o Landon Raiford and Kimberly Ross Clayson
11 E Wacker Dr #2600
Chicago, IL 60601
lraiford@taftlaw.com
kclayson@taftlaw.com

## ARTICLE 9: TAX CONSEQUENCES

Debtor is unable at this time to fully determine the effect that the proposed Plan will have upon its tax attributes. Debtor recommends that the Creditors consult their tax specialist relative to the tax consequences of the Plan to the Creditors.

No ruling has been sought or obtained from the IRS with respect to any of the tax aspects of the proposed Plan and no opinion of counsel has been obtained by the Debtor with respect thereto. No representations or assurances are being made with respect to the federal income tax consequences as described herein. Certain types of claimants and interest holders may be subject to special rules not addressed in this summary of federal income tax consequences.

## ARTICLE 10: LEGAL REQUIREMENTS

### 10.01   Voting Procedures

The Voting Procedures for the Plan are governed by that certain *Order (A) Scheduling a Hearing to Consider and Approve the Chapter 11, Subchapter V Plan of Reorganization Proposed by the Debtor; (B) Authorizing the Distribution of the Procedures for the Solicitation and Tabulation of Votes to Accept or Reject the Plan; (c) Approving Notice of the Confirmation Hearing; (D) Approving the Form of the Ballot and Solicitation Package; and (E) Approving the Notice Provisions*. [Dkt. 66] (the "Plan Procedures Order"), as modified. [Dkt. 73 and 84].

Under the Bankruptcy Code, the only classes that are entitled to vote to accept or reject a plan are classes of claims, or equity interests, which are impaired under the plan. Accordingly, classes of claims or interests that are not impaired are not entitled to vote on the Plan.

17

Classes 1, 3, and 6 are deemed to accept the Plan.

Classes 2, 4 and 5 are entitled to vote on the Plan.

Voting on the plan by each holder of a claim or interest in an impaired class is important. After carefully reviewing the plan, each holder of such a claim or interest should vote on the enclosed ballot either to accept or to reject the plan, and then return the ballot in accordance with the Plan Procedures Order.

### 10.02  Confirmation

Confirmation of a plan under Chapter 11, Subchapter V of the Bankruptcy Code is governed by section 1191 of the Bankruptcy Code.

### (a)  Requirements for Consensual Confirmation

Confirmation pursuant to section 1191(a) of the Bankruptcy Code is treated as a consensual confirmation. Confirmation under this subsection provides that the court shall confirm a plan if the Plan meets all of the requirements of section 1129(a) of the Bankruptcy Code except for paragraph 15 of that subsection are met.

Sections 1129(a) and 1129(b) of the Bankruptcy Code establish conditions for the confirmation of a plan. These conditions are too numerous and detailed to be fully explained here. Parties are encouraged to seek independent legal counsel to answer any questions concerning the Chapter 11 process.

Among the several conditions for confirmation of a plan under section 1129(a) of the Bankruptcy Code are these:

1. Each class of impaired creditors and interests must accept the plan.

2. Either each holder of a claim or interest in a class must accept the plan, or the plan must provide at least as much value as would be received upon liquidation under Chapter 7 of the Bankruptcy Code.

The Bankruptcy Code defines acceptance of a plan by an impaired class of equity interests as acceptance by holders of at least two-thirds in number of the equity interests of that class that actually cast ballots. If no creditor or interest holder in an impaired class votes, then that class has not accepted the plan.

**(b) Requirements for Confirmation without Consent**

Since Debtor filed for bankruptcy protection under Chapter 11, Subchapter V of the Bankruptcy Code, Debtor may also confirm the Plan without consent pursuant to the requirements of Section 1191(b) of the Bankruptcy Code. Section 1191(b) of the Bankruptcy Code requires that Debtor meet all of the applicable requirements section 1129 of the Bankruptcy Code except for paragraphs (8), (10), and (15) of that section so long as the Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under the Plan.

The Court will determine that the Plan is fair and equitable with respect to each class of claims or interests where it finds that the Plan has met the following requirements:

(i) With respect to a class of secured claims, the plan meets the requirements of section 1129(a)(2) of the Bankruptcy Code; and

(ii) As of the Effective Date of the Plan all of Debtor's projected disposable income to be received in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date that the first payment is due under the plan will be applied to make the Plan payments; or

(i)     the value of the property to be distributed under the Plan in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date on which the first distribution is due under the plan is not less than Debtor's projected disposable income.

(ii) The Plan is feasible, in that Debtor will be able to make all payments under the Plan or there is a reasonable likelihood that Debtor will be able to make all payments under the Plan and the Plan provides appropriate remedies to protect the holders of claims or interests in the event that payments are not made.

"Disposable income" is defined under the Bankruptcy Code to mean that income which is not reasonably necessary to be expended for the payment of expenditures necessary for the continuation, preservation, or operation of the business of Debtor.

**10.03 Modification/Withdrawal**

The Debtor reserves the right to modify or withdraw the plan at any time before confirmation.

Pursuant to section 1193 of the Bankruptcy Code:

**If this plan is confirmed under section 1191(a)** of the Bankruptcy Code, Debtor may modify the Plan at any time after confirmation of the Plan and before substantial consummation of the Plan. Any such modified plan will become the Plan by court order confirming any modified plan and only after notice and a hearing on such modification.

**If this plan is confirmed under section 1191(b)** of the Bankruptcy Code, Debtor may modify the Plan at any time within 3 years, or such longer time not to exceed 5 years. Any such modified plan will become the Plan by court order confirming any modified plan and only after notice and a hearing on such modification.

**ARTICLE 11: GENERAL PROVISIONS**

**11.01 Definitions and rules of construction.** The definitions and rules of construction set forth in sections 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the following

definitions:

**11.02    Effective date.** The effective date ("<u>Effective Date</u>") of this Plan is the day that is fourteen (14 days after the entry of an order from the Bankruptcy Court confirming the Plan (the "<u>Confirmation Order</u>")). If, however, a stay of the Confirmation Order is in effect on that date, the Effective Date will be the day after the date on which the stay expires or is otherwise terminated. These periods are calculated as provided in Bankruptcy Rule 9006(a)(1).

**11.03    Severability.** If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**11.04    Captions.** The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**11.05    Controlling effect.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Illinois govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**11.06    Retention of Jurisdiction.** The court confirming the Plan may exercise jurisdiction to the full extent necessary to administer this case after Plan confirmation and to adjudicate any related adversary proceedings or contested matters, including those relating to the Plan, such as concerning the Plan's construction, implementation, or modification. Neither this provision nor anything in this Plan constitutes a limitation on or an expansion of the jurisdiction authorized by title 28 of the United States Code.

Respectfully submitted,

**ANI ROOF LLC**

Dated: February 10, 2026

By: */s/Landon Raiford*
Attorney for the Debtor

Landon Raiford
(6297473 IL)
lraiford@taftlaw.com
Taft Stettinius & Hollister LLP
111 E. Wacker Drive, Suite 2600
Chicago, Illinois 60601
312-527-4000

Kimberly Ross Clayson
(Michigan Bar # P69804)
kclayson@taftlaw.com
Taft Stettinius & Hollister LLP
27777 Franklin Road Suite 2500
Southfield, Michigan 48034
248-351-3000

# CERTIFICATE OF SERVICE

I, Landon S. Raiford, an attorney, on oath state that I caused to be served this Modified Second Amended Chapter 11, Subchapter V Plan of Reorganization by ECF service to all parties shown below on February 10, 2026.

/s/ *Landon S. Raiford*

*Via Electronic Service*

Unites States Trustee
Adam G. Brief
Office of the U.S. Trustee, Region 11
219 South Dearborn
Suite 873
Chicago, Illinois 60604

Robert P Handler
Commercial Recovery Associates, LLC
205 West Wacker Drive, Suite 918
Chicago, IL 60606
rhandler@com-rec.com

Kimberly Ross Clayson
Taft Stettinius & Hollister LLP
27777 Franklin Rd, Suite 2500
Southfield, MI 48034
kclayson@taftlaw.com

Landon Raiford
Taft Stettinius & Hollister LLP
111 E. Wacker Drive, Suite 2600
Chicago, IL 60601
lraiford@taftlaw.com

William J. McKenna
FOLEY & LARDNER LLP
321 N . Clark St., Suite  3000
Chicago , IL 60654-4762
wmckenna@foley.com

The Howard Law Firm, LLC
Attn: Michael Lotus & Michael J. Lotus
1020 Milwaukee Ave., Ste 260
Deerfield, IL 60015

Lurie & Unterberger, Ltd.
Attn. Mark J. Unterberger
2345 Waukegan Road Suite 165
Bannockburn, Illinois 60015

Chitkowski Law Offices
Attn: John J. Chitkowski & Corey B. Stern
901 Warrenville Road, Suite 103
Lisle, IL 60532